NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BAWER AKSAL,<br><br>Defendant. | Criminal No. 12-577 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge,

This matter comes before the Court by way of Defendant Bawer Aksal's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 [Docket Entry No. 71]. The Court has considered the submissions made in support of and in opposition to Defendant's motion. Based on the reasons that follow, Defendant's motion is **DENIED**.

## BACKGROUND

On August 21, 2012, Defendant was charged with violating 18 U.S.C. §2242(2) for knowingly and intentionally engaging in a sexual act with another person while that "person was incapable of appraising the nature of the conduct and physically incapable of declining participation in, and communicating unwillingness to engage in, the sexual act." (Compl. at 1). Defendant was indicted on this charge on August 30, 2012. On November 29, 2012, the Government filed a Superseding Indictment amending the charge of sexual abuse and adding a second count of Abusive Sexual Contact in violation of 18 U.S.C. §2244(a)(2). On January 17, 2013, the Government filed a Second Superseding Indictment.

1

On July 19, 2013, a jury found Defendant guilty of committing: (1) sexual abuse in violation of 18 U.S.C. §2242(2), and (2) criminal sexual contact in violation of §2244. On July 31, 2013, Defendant filed the instant motion for judgment of acquittal pursuant to Rule 29.

In support of his motion, Defendant argues that the evidence presented at trial was insufficient to support a guilty verdict, for either count, because: (1) Thomas' testimony is completely contradicted by witnesses, the evidence and common sense, and (2) a rational fact finder could not conclude that sufficient evidence existed to establish the necessary elements for the crimes of sexual abuse and/or sexual contact. The Court will consider both arguments, in turn.

## **LEGAL STANDARD**

To prevail on a Rule 29 motion for judgment of acquittal, Defendant "bears the heavy burden of showing that, viewing the evidence in the light most favorable to the Government, no rational trier of fact could find him guilty beyond a reasonable doubt." *United States v. Johnson*, 302 F. 3d 139, 149 (3d Cir. 2002). The court does not weigh evidence or determine the credibility of witnesses in making this determination but rather examines the totality of the evidence, both direct and circumstantial. *United States v. Pendleton*, 636 F.3d 78, 84 (3d Cir. 2011). It must credit all available inferences in favor of the government. *Id*. It is immaterial that the evidence may permit a less sinister conclusion than the one the jury made. *United States v. Holmes*, 387 Fed. Appx. 242, 245 (3d Cir. 2010). A court should only find that evidence is insufficient to sustain a conviction where the prosecution's failure is clear. *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984). Direct evidence is not required as "knowledge is often proven by circumstances" and "a case can be built against a defendant grain-by-grain until the scale finally tips." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013). When a defendant

challenges the sufficiency of the evidence supporting a jury verdict, the Court employs a standard of review that is particularly deferential. *United States v. Peppers*, 302 F.3d 120, 125 (3d Cir. 2002). Even if the evidence supports multiple possibilities, "our role as a reviewing court is to uphold the jury verdict – and not to usurp the role of the jury – as long as it passes the 'bare rationality' test." *Caraballo-Rodriguez*, 726 F.3d at 432. Thus, "unless the jury's conclusion is irrational, it must be upheld." *Id.*

## DISCUSSION

**1. Thomas's Testimony**

Defendant first argues that a reasonable jury could not have found him guilty because Thomas's testimony is contradicted by witness testimony, the evidence, and common sense. (Def. Br. at 7). In support of this argument, Defendant relies on the following pieces of allegedly contradictory evidence:

- Evan Focht ("Focht") testified that he saw Defendant's right arm over Thomas's right shoulder and his left hand resting at the midline or midriff of Thomas. (Tr. 3.168:12). Defendant claims this contradicts Thomas's testimony that defendant's left hand penetrated her through the back of her shorts. (Def. Br. at 8). Focht further testified that he could not recall if Thomas adjusted her clothing before exiting the aisle. (Tr. 3.135:20-21). Defendant alleges this is contradictory to Thomas's claim that she adjusted her clothing after she awoke. (Def. Br. at 7).

- DNA expert, Jocelyn Carlson ("Carlson") testified that Defendant's DNA was not found on Thomas' bra and/or panties. (Tr. 5.50:13-19). Defendant Aksal argues that this contradicts Thomas's statement that the Defendant removed her bra, breaking the underwire and removing her clothing. (Def. Br. at 9).

- Passengers Michael Rossani ("Rossani") and Eric Gumin ("Gumin") testified that they both felt a jolt from behind and immediately saw individuals leaving the row behind them. (Tr. 4.73:10-76:7; 94:1-95:8). According to Defendant, Rossani, in particular, testified that he felt a jolt and then felt someone touch his head immediately thereafter. (citing "4.74-

3

4.75"). Defendant claims that the jolt and simultaneous touch felt by Rossani could not have been the result of a struggle—as the Government claimed—but rather an indication of someone simply leaving the row behind. (Def. Br. at 9-10). Moreover, Defendant points to Focht's testimony that Thomas left the row nearly a minute or a minute and a half after she purportedly awoke (Tr. 3.137:7-10), as contradicting Rossani's testimony that the he felt someone touch his head immediately after feeling the jolt.

- Defendant argues that Thomas's testimony is completely contradicted by common sense. (Def. Br. at 7). In particular, Defendant contends that he could not have penetrated Thomas' anus and vagina with his left hand while simultaneously pulling Thomas' necklace back and pinching Thomas' left nipple with his right hand. (Def. Br. at 13). Equally "preposterous," according to Defendant, is the contention that Defendant could have done all of the foregoing acts—which includes the pulling and breaking of Thomas' underwire bra—all without waking her up. (Def. Br. at 13).

Defendant points to additional evidence to support the view that a reasonable juror could not have found Thomas's testimony credible. For example, Thomas stated that she barely spoke to Focht while he testified that they exchanged small talk for several minutes. (Tr. 3.90:25-91:12; 3.143:3-19). Thomas stated that she only told Franca Martinez and her boyfriend about the assault but later testified that she also told her ex-husband. (Tr. 2.138:16-139:9-6; 3.117:19-24). Defendant argues that a reasonable jury could not have believed Thomas's claim that the text message sent from her phone to FBI Agent Carley was actually sent by her son. (Def. Br. at 11, Tr. 3.110:7; 3.111:4). Defendant also points out that Thomas stated that she met with the government five times regarding the incident, while FBI Agent Flippo testified that Thomas met with the government ten times. (Tr. 3.88:21-22; 4.216:14-17). Finally, Defendant points out that as Thomas walked to the back of airplane, after the incident occurred, she approached flight attendant Maria Stridh who testified that Thomas told her that the gentleman in the middle seat was "touching her breasts and kissing her." (Tr. 6.10-11). According to Stridh, Thomas did not tell her that Defendant had touched any other part of her body. (*Id*.). On the other hand, Defendant

4

points to testimony from flight attendant Elizabeth Britt-Harrison, who testified that Thomas had told her that "she woke up as the passenger in 24E was sticking his hand down her shorts and inside of her and grabbed her right breast." (Tr. 4.16-1-11). According to Defendant, such inconsistencies render Thomas's testimony not credible.

Having carefully considered Defendant's argument in this regard the Court concludes that, to the extent Defendant challenges Thomas' credibility or the credibility of Focht, Rossani and/or Gumin, "[i]t is not for us to weigh the evidence or to determine the credibility of the witnesses." *United States v. Dent*, 149 F.3d 180 (3d Cir. 1998) (quoting *United States v. Voigt,* 89 F.3d 1050, 1080 (3d Cir.), *cert. denied*, 519 U.S. 1047 (1996)). Rather, "the determination of witness credibility is the province of the jury." *United States v. Walker*, 529 Fed. Appx. 256, 266 (3d Cir. 2013) (citing *United States v. Brennan*, 326 F.3d 176, 191 (3d Cir. 2003)).

Though it may be true that there were perhaps minor inconsistencies in the testimony provided by Focht, Rossani, Gumin, the flight attendants and/or Thomas concerning the circumstances surrounding Defendant's actions on the night in question—the majority of which were the subject of extensive cross examination by Aksal's defense counsel—the Court finds that the overall testimony was consistent with respect to the allegations stated in the Second Superseding Indictment. Certainly, these minor discrepancies—to the extent they are even true discrepancies—do not rise to the level of causing this Court to believe that no reasonable jury could have reached a verdict of guilty. Rather, it was within the discretion of the jury to resolve these inconsistencies in favor of the Government. *See, e.g., Walker*, 529 Fed. Appx. at 266. For instance, the jury could reasonably have attributed these inconsistencies to the time lapse between the event in question (August 2012) and the trial (July 2013). It would also have been reasonable for the jury to give little or no weight to such minor inconsistencies in witness testimony to the

extent the jurors determined that such inconsistencies were not material to the elements of the crimes charged. Whatever the jury's reasoning may have been, this Court cannot conclude that, in light of such minor inconsistencies, no reasonable jury would have arrived at a guilty verdict beyond a reasonable doubt. *See, e.g., United States v. Flack*, 475 Fed. Appx. 823, 825 (3d Cir. 2012) ("As to the sufficiency of the evidence, while there are inconsistencies in Smith's and Jackson's testimony and reasons to doubt their veracity, those are credibility determinations squarely within the jury's domain.") (citing *United States v. Ozcelik*, 527 F.3d 88, 94 (3d Cir. 2008)); *see generally United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) ("Courts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury.").

Moreover, viewing the evidence in the light most favorable to the Government, the Court concludes that, as to all key points—as discussed in more detail below—the foregoing witnesses' testimony was consistent. *See, e.g., Caraballo-Rodriguez,* 726 F.3d at 431 ("Jurors are instructed extensively as to what evidence they can consider, how to consider it, and how to assess the credibility of witnesses, as well as the relevant legal principles. We trust that they follow these instructions."). Defendant's argument in this regard is therefore rejected.

**2.     Sufficiency of the Evidence**

Defendant next argues that a rational fact finder could not have concluded that sufficient evidence existed to establish the necessary elements for the crimes of sexual abuse and/or sexual contact.

### A. Count One—Sexual Abuse (18 U.S.C. § 2242(2))

Count One of the Second Superseding Indictment charged Defendant with violation of 18 U.S.C. § 2242(2), which provides in pertinent part that:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly . . . engages in a sexual act with another person if that other person is: (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act; or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

At trial, this Court instructed the jury that, in order to prove sexual abuse, the Government must show:

> [F]irst that the defendant knowingly engaged in a sexual act with Susan Thomas;
>
> Second: They must prove that Susan Thomas was incapable of appraising the nature of the conduct or physically incapable of declining participation in or communicating her own willingness to engage in that sexual act;
>
> Third: The Government must prove that the defendant knew that Susan Thomas was incapable of appraising the nature of the conduct or physically incapable of declining participation in or communicating her unwillingness to engage in a sexual act;
>
> Finally, fourth: The Government must prove that the offense was committed within the boundaries of a special aircraft jurisdiction of the United States. What that means is on an aircraft that was in flight within the United States.
>
> In this case, the words "sexual act" means penetration, however slight, of the anal or genital opening of another by a hand or a finger or any object with an intent to abuse, humiliate, harass, or degrade or arouse or gratify the sexual desire of any person.

(Tr. 6.62:4-25).

Defendant argues that the Government did not meet its burden of proof with regard to the first, second, and third elements because it presented no credible evidence showing that Defendant knowingly participated in an unwanted sexual act. (Def. Br. at 15). In support of this position,

7

Defendant cites to the portion of Focht's testimony where he states that he did not see Defendant's hand move underneath her sweater, the lack of DNA evidence, and the implausibility that Thomas could sleep through the incident she alleges occurred. (*Id*. at 15-16). Next, Defendant argues that the Government failed to present any evidence showing that Thomas was incapable of appraising the nature of conduct or physically incapable of declining participation in or communicating unwillingness to engage in a sexual act, to the extent one occurred. (Def. Br. at 16). Finally, as to the third element, Defendant argues that the "lack of any objection from Thomas who could not have possibly slept through these actions prevents the fact finder from concluding that the Defendant committed any sexual contact while believing that Thomas was physically incapable of participating in the act." (Def. Br. at 17). The parties do not dispute that the fourth element was met in this case.

The Court agrees that, based on the following evidence, a rational trier of fact could conclude that the elements of sexual abuse were met. First and foremost, there is Thomas' own testimony. She testified that she fell asleep on the airplane with her body facing the window and no portion of her body touching the defendant. (Tr. 2.96:9-97:7). She then testified that she later awoke to the feeling of something penetrating her vagina and anus, simultaneously. (Tr. 2.97:24-98:16). She further testified that once she completely woke up, she realized that Defendant's "one hand was under my shirt, over my breast, and his other hand was penetrating the—inside of my pants." (Tr. 2.98:6-8). Thus, a reasonable jury could have relied on Thomas' testimony, alone, to find that the first three elements of sexual abuse were met. In particular, she testified that he engaged in a sexual act by penetrating her vagina and anus with his finger(s) and that she was asleep when this occurred. Such evidence could establish elements one, two and three of the crime of sexual abuse, 18 U.S.C. § 2242(2).

To the extent Defendant nevertheless maintains that the Government failed to show the third element—that Defendant *knew* Thomas was physically incapable of declining participation in the sexual act—the Court finds that it would not be irrational for a jury to conclude that Defendant possessed such knowledge by virtue of crediting Thomas's testimony that she was asleep. *See, e.g., Caraballo-Rodriguez*, 726 F.3d at 43 (noting that "knowledge is often proven by circumstances" and that "our role as a reviewing court is to uphold the jury verdict – and not to usurp the role of the jury – as long as it passes the 'bare rationality' test.").

Beyond Thomas's own testimony, a reasonable jury could have relied on Focht's testimony that Thomas's eyes were closed and that she appeared motionless for most of the flight to draw the rational conclusion that Thomas was asleep (and was thus physically incapable of declining participation in the sexual act). (Tr. 2.130:2-14). A reasonable jury could also conclude, based on Focht's testimony, that Defendant knew Thomas was physically incapable of declining participation in the sexual act by virtue of his close proximity to her later in the flight. (Tr. 2.132:19-133:11) ("[T]he woman was still turned towards the window with her head on the seat, and the defendant was kind of spooned up next to her, so that there was no space between him and her").

To the extent Defendant argues that it was irrational to conclude that Thomas could have possibly slept through the vaginal and/or anal penetration, the Court finds that a reasonable jury could have drawn such conclusion based on, *inter alia,* the testimony of Franca Martinez—a former co-worker and friend of Thomas. Martinez testified as to how difficult it is for Thomas to wake up on a regular basis, even when utilizing her alarm clock's loudest setting. (Tr. 5.68:20-69:8) ("[S]he doesn't really wake up with an alarm clock regardless of how loud it is. She actually needs to be woken by somebody and be actually touched and shaken quite a bit. She doesn't wake

9

up easily."). Based on such evidence—which was corroborated by Thomas's testimony that she was a heavy sleeper—it would not have been irrational for a jury to conclude that Thomas was asleep when the sexual act occurred. (Tr. 2.54:22-55:17). Although Defendant maintains that Thomas's ability to sleep through an alarm clock is clearly distinguishable from a person's ability to sleep through, among other things, simultaneous vaginal and anal penetration, "[i]t is not for us to weigh the evidence or to determine the credibility of the witnesses." *United States v. Dent*, 149 F.3d 180 (3d Cir. 1998) (quoting *United States v. Voigt,* 89 F.3d 1050, 1080 (3d Cir.), *cert. denied*, 519 U.S. 1047 (1996)).

Thus, the Court finds that viewing the evidence in the light most favorable to the Government, a rational trier of fact could convict Defendant Aksal of sexual abuse, in violation of 18 U.S.C. § 2242(2).[1]

### B. Count Two—Abusive Sexual Contact (18 U.S.C. § 2244(b))

18 U.S.C. § 2244(b) provides that:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in sexual contact with

---

[1] Although Defendant does not expressly challenge the sufficiency of the evidence as to whether the penetration performed was done "with an intent to abuse, humiliate, harass, or degrade or arouse or gratify the sexual desire of any person," the Court nevertheless concludes that there was sufficient evidence in the record upon which a reasonable jury could have found that this aspect of Count One was met. In particular, Thomas testified that Defendant "seductive[ly]" asked her to kiss him as she awoke. (Tr. 2.110:12-111:8). ). In addition, Focht testified that Defendant asked him to turn off his overhead light. (Tr. 3.131:3-7). Based on this evidence, it would not be irrational for a jury to conclude that Defendant acted with the intent to arouse and/or sexually gratify himself or Thomas.

another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both.

As to Count Two, this Court instructed the jury as follows:

> [T]he Government must prove . . . beyond a reasonable doubt . . . .
>
> First, that the defendant knowingly caused sexual contact with Susan Thomas;
>
> Second: They must prove that the sexual contact was without Susan Thomas' permission;
>
> Third: They must [prove] that the offense was committed within the boundaries of an aircraft, in other words, within the special aircraft jurisdiction of the United States, that is, while the aircraft was in flight within the United States.
>
> And in the context of that charge, sexual contact means the intentional touching, either directly or through the clothing of the genitalia, anus, groin, breast, inner thigh or buttocks of Susan Thomas with an intent to abuse, humiliate, harass or degrade or to arouse or gratify the sexual desire of another person or of any person.
>
> . . . .
>
> [P]roof of somebody's state of mind, in this case intent, right, or knowledge with which a person acts at any given time cannot be proven directly because one cannot read another person's mind and tell whatever he or she is thinking. However, a defendant's state of mind can be proven indirectly from the surrounding circumstances. Thus, to determine whether a defendant's state of mind or what the defendant intended or knew at a particular time, in order to decide that, you may consider evidence about what the defendant said, what the defendant did or failed to do, how the defendant acted and all of the other facts and circumstances shown by the evidence that may prove [what] . . . the defendant's state of mind was at the time. It is entirely up to you to decide what the evidence that was presented during this trial proves or failed to prove about the defendant's state of mind.

(Tr. 6.64:11-65:24).

Defendant argues that the Government did not meet its burden of proof with regard to the first and second elements because it presented no credible evidence showing that Defendant

touched Thomas's breasts and, assuming that he did, there is no evidence to suggest that it was not consensual. (Def. Br. at 18). In support of this position, Defendant points to Focht's testimony that he did not see Thomas adjust her clothing, after she claims it was pulled down. (*Id.*). Further, Defendant points to the fact that Defendant's DNA was not found on her bra, despite Thomas' testimony that her underwire had been pulled down and broken. (*Id.*).

Based on the reasons that follow, the Court finds that a rational trier of fact could conclude that the elements of abusive sexual contact are met. As with Count One, the Court finds that Thomas' testimony, alone, is sufficient to establish elements one and two of Count Two. In particular, Thomas testified that when she woke up, she felt Defendant's right hand under her shirt and over her breast. (Tr. 2.98:6-8). She further testified that her underwire bra had been pulled down and was broken. (Tr. 2.114:16-19) ("I felt the wire jabbing me, and that is when I realized that the bra was pulled all the way down to my waist."). She further testified that she was asleep when this initially occurred, that he "seductive[ly]" asked her to kiss him as she awoke, and that she told him to get off of her once she was fully awake. (Tr. 2.110:9-111:5). Based on this evidence, it would not be irrational for a jury to conclude that Defendant intentionally touched Thomas' breast without her permission and that he did so as to arouse and/or sexually gratify himself or Thomas.[2] There is no dispute that the third element is met.

---

[2] As previously stated with respect to Count One, although Defendant does not expressly challenge the sufficiency of the evidence as to whether Defendant engaged in sexual contact with the "intent to abuse, humiliate, harass or degrade or to arouse or gratify the sexual desire of another person or of any person" the Court nevertheless finds that there is sufficient evidence upon which a reasonable jury could conclude that this aspect of Count Two was met. Thomas testified that Defendant "seductive[ly]" asked her to kiss him as she awoke. (Tr. 2.110:12-111:8). In addition, Focht testified that Defendant asked him to turn off his overhead light. (Tr. 3.131:3-7). Based on this evidence, it would not be irrational for a jury to conclude that Defendant acted with the intent to arouse and/or sexually gratify himself or Thomas.

The Court also finds that a reasonable jury could have concluded that Focht's testimony corroborated Thomas' testimony as to the fact that Thomas had no contact with Defendant prior to her falling asleep, Defendant's movement from the center of his seat to a position where his body was up against the back of Thomas' body, and as to the location of Defendant's right arm, which was "over and around" her shoulder, all while Thomas continued to appear to be asleep and motionless. (Tr. 3.130:2-134:13). A reasonable jury could also construe that Focht's testimony concerning Defendant's request that he turn off his overhead light as suggestive that Defendant acted with an intent to arouse and/or sexually gratify himself or Thomas. (Tr. 3.131:3-7). A reasonable jury could also conclude that Defendant acted, in this regard, without Thomas' permission given Focht's testimony concerning her reaction upon waking up. (Tr. 3.134:18-24) ("A few seconds after that, Ms. Thomas jostled awake. . . . [A] visible jerking waking up. . . . She slammed down the armrest that was up between them, slammed down it down. It was an audible slam.").

Although Defendant nevertheless maintains that there is no evidence to suggest that Defendant touched Thomas' breast(s) and/or that such touching was done without her permission, the Court reiterates that direct evidence is not required, as "knowledge is often proven by circumstances" and "a case can be built against a defendant grain-by-grain until the scale finally tips." *Caraballo-Rodriguez*, 726 F.3d at 431. In light of the foregoing, the Court concludes that the evidence discussed above is sufficient to support a rational jury finding that Defendant knowingly committed abusive sexual contact, in violation of 18 U.S.C. § 2244(b).

# CONCLUSION

For the reasons discussed above, Defendant's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 is denied. The evidence presented by the Government against Defendant Aksal was such that a reasonable juror could accept it as sufficient to support a conclusion that Aksal was guilty beyond a reasonable doubt as to Counts One and Two of the Second Superseding Indictment.

An appropriate Order accompanies this Opinion.

DATED: December 17, 2013

                                                    <u>Jose. L. Linares</u>
                                                    JOSE L. LINARES
                                                    U.S. DISTRICT JUDGE